63 P.3d 435

David I. PAINTER, Claimant–Appellant,

v.

POTLATCH CORPORATION, Employer, and Workers Compensation Exchange, Surety, Defendants–Respondents.

No. 27390.

Supreme Court of Idaho, Lewiston, October 2002 Term.

Jan. 23, 2003.

Keeton & Tait, Lewiston, for appellant. John R. Tait argued.

Clements, Brown & McNichols, P.A., Lewiston, for respondents. Dean Wullenwaber argued.

KIDWELL, Justice.

David I. Painter (Painter) appeals from the decision of the Idaho Industrial Commission (the Commission) finding that Painter failed to prove that he was injured as a result of workplace accidents on September 15 and 16, 1997. This Court affirms the Commission's findings of fact and conclusions of law.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Painter alleged that he suffered injuries resulting from work-related accidents on September 15 and 16, 1997, while employed by Potlatch Corporation (Potlatch) as a journeyman machinist and "lead man" who supervised apprentice machinists. Painter had worked for Potlatch in various positions since August 1966.

In 1971, while working for Potlatch, Painter had back surgery because of work related injuries including a ruptured disk and fractured spine. Painter received workers' compensation benefits as a result of the 1971 accident and injury. From 1971 on, Painter

suffered chronic back pain, though the severity of the pain varied from time to time. In the three years preceding September 1997, Painter's back pain gradually increased.

On September 6, 1997, Painter was injured when a branch from a tree he was pruning at home fell upon his shoulder causing him to twist and fall. On September 7, 1997, Painter sought medical attention for pain in his shoulder, back and hip and/or buttock area. Painter took the week of September 8 through September 12, 1997, off to recuperate from his tree-pruning injury, though he did attend one meeting related to his lead man duties on Friday, September 12, 1997. At the meeting, Painter was relieved of his lead man duties for various reasons, including his inability to work with an apprentice machinist. The reassignment, or "demotion," upset Painter.

Painter returned to work on Monday, September 15, 1997. He was informed that Potlatch was reducing his pay rate from the lead man rate of $22.933 per hour to the normal machinist rate of $22.635 per hour. The week of September 15, 1997, was a "major shut down" week during which Potlatch closed its mill for preventative maintenance. During shut down weeks, machinists were assigned to supervise contractors that perform maintenance work. Painter was assigned to supervise work by Pacific Pipe and Mechanical (Pacific Pipe), a contractor hired to maintain the impellers used to mix liquid pulp stock.

On September 15 and 16, 1997, while working with Pacific Pipe, Painter lifted some heavy impeller parts. On both September 15 and 16, while lifting parts, Painter allegedly experienced sudden and severe back and leg pain. No one witnessed these incidents. Painter did not file an incident report or go to first aid as he had after previous accidents and he continued to work his full shift each day of the week. Also, Painter gave contradictory statements regarding the time of the alleged accidents. Painter did tell co-workers that his back hurt, as he had on numerous prior occasions, but he did not mention the specific incidents of sudden and severe back pain he experienced while lifting impeller parts. Painter noted the incidents on his

work calendar and he turned down the opportunity to work weekend shifts on September 20 and 21, 1997. Thereafter, Painter never returned to work for Potlatch.

Between September 22 and December 2, 1997, Painter sought medical care on six occasions. None of the medical records mention the events of September 15 and 16, 1997, though the records do show that Painter experienced discomfort when lifting in the course of his work. During this time, Painter spoke to Todd Blake (Blake), an agent for the Workers Compensation Exchange (the Exchange), Potlatch's workers' compensation surety. Painter asked Blake to reopen his 1971 worker's compensation claim. Painter told Blake that his chronic back pain had worsened during the week of September 15, 1997, but he did not mention any specific incidents. After a review of Painter's medical records, Blake denied Painter's request to re-open the 1971 claim.

On three occasions, both before and after seeking to re-open his 1971 workers' compensation claim, Painter filed claims for non-industrial "A & H" benefits. On the first claim form, dated September 25, 1997, Painter indicated that his claim resulted from a tree pruning accident and he did not respond to the question regarding whether the injury was work related. On the second form, dated November 11, 1997, Painter indicated that the claim was work related and resulted from aggravation of a preexisting injury; Painter, however, denied that the claim arose as the result of an accident. On the third form, dated December 8, 1997, Painter indicated that his claim stemmed from chronic back pain, that it was work related, and that it was the result of an accident.

When Painter saw Dr. Riley on December 2, 1997, Dr. Riley noted Painter's 1971 injury and the tree pruning accident. The notes, however, also state that the aggravation of Painter's back pain was not caused by the tree pruning accident, but rather that the tree pruning accident exacerbated a severe, underlying problem. At the appointment, Dr. Riley suggested that Painter retain legal counsel to further pursue his workers' compensation claim. Dr. Riley's December 2,

1997, notes fail to mention the alleged accidents of September 15 and 16, 1997.

On December 19, 1997, Painter's counsel served Potlatch and the Exchange with two workers' compensation claims, one for September 15, 1997, and one for September 16, 1997. The claims provide the first detailed account given by Painter of the alleged accidents.

The Commission consolidated Painter's claims into a single action. A Commission referee heard the consolidated claims on January 6 and 7, 2000. The referee found that Painter suffered injury due to work-related accidents of September 15 and 16, 1997, resulting in a six percent disability and medical expenses.

On December 14, 2000, the Commission issued findings of fact and conclusions of law. The commissioners found, in relevant part, that: (1) if proven, the incidents alleged by Painter on September 15 and 16, 1997, would constitute accidents by statutory definition; (2) Painter's testimony was inherently contradictory and, therefore, not credible; and (3) because Painter's testimony was unreliable, he failed to meet the burden of proving that accidents more likely than not occurred on the dates in question. The Commission found moot the other issues raised, including whether Painter timely filed his claim, and whether Potlatch and the Exchange complied with I.C. § 72–602. Painter petitioned for reconsideration on December 29, 2000. The petition for reconsideration was denied on February 9, 2001, and Painter timely appealed.

## II.

### STANDARD OF REVIEW

Factual findings will be upheld if supported by substantial, competent evidence. *Jensen v. City of Pocatello,* 135 Idaho 406, 412, 18 P.3d 211, 217 (2000). "Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion." *Id.* (citing *Zapata v. J.R. Simplot Co.,* 132 Idaho 513, 515, 975 P.2d 1178, 1180 (1999)). Unless

clearly erroneous, this Court will not disturb the Commission's conclusions on the credibility and weight of evidence. *Id.* at 409, 18 P.3d at 214. This Court will not "re-weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented." *Id.* (citing *Warden v. Idaho Timber Corp.,* 132 Idaho 454, 457, 974 P.2d 506, 509 (1999)).

This Court freely reviews the Industrial Commission's conclusions of law. *Hamilton ex rel. Hamilton v. Reeder Flying Serv.,* 135 Idaho 568, 571, 21 P.3d 890, 893 (2001) (citing *Taylor v. Soran Rest., Inc.,* 131 Idaho 525, 527, 960 P.2d 1254, 1256 (1998)).

## III.

### ANALYSIS

A. **Substantial Competent Evidence Supports The Commission's Findings Of Fact And Conclusions Of Law.**

To prevail on his workers' compensation claim, Painter bore the burden of establishing an accident by a preponderance of the evidence. *McGee v. J.D. Lumber,* 135 Idaho 328, 335, 17 P.3d 272, 279 (2000) (citing *Nelson v. Ponsness–Warren Idgas Enter.,* 126 Idaho 129, 133, 879 P.2d 592, 595 (1994)). Section 72–102(17)(b), Idaho Code, defines an accident as "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." The term " 'injury' means a personal injury" and the terms "injury and personal injury shall be construed to include only an injury caused by an accident, which results in violence to the physical structure of the body." *Id.* §§ 72–102(17)(a) and (c). Aggravation of a preexisting condition may constitute an injury if it is precipitated by an accident. "An injured worker must do more than show an onset of pain while at work in order to sustain his or her burden of proving an event or mishap occurred." *McGee,* 135 Idaho at 335, 17 P.3d at 279 (quoting *Perez v. J.R. Simplot Co.,* 120 Idaho 435, 438, 816 P.2d 992, 995 (1991)). In this case, the Commission found that, if proven, the incidents

alleged to have occurred on September 15 and 16, 1997, would constitute accidents. "Therefore," the Commission stated, "the issue is whether [Painter's] testimony about the two accidents can be believed."

There is substantial and competent evidence in the hearing transcript and exhibits to support the Commission's finding that Painter's testimony regarding the accidents cannot be believed. On his work calendar, Painter noted that he was hurt at work on September 15 and 16, 1997, and suffered pain in his back and left leg. Painter also testified that he experienced two incidents of "paralyzing" pain, unlike any pain he had experienced in twenty-five years, while lifting impeller parts. Painter did tell fellow employees that his back hurt on the dates in question, but his complaints were no different than his occasional complaints during the previous two-and-a-half decades. Painter also sought medical care on six occasions between September 16 and December 2, 1997. While the records indicate that work aggravated his back pain, none of the medical records mention any mishaps or untoward events on September 15 and 16, 1997. Painter's non-industrial benefit claim forms also fail to mention any specific incidents occurring on the dates in question. When he discussed workers' compensation with the Exchange, he failed to describe the new accidents; rather, he sought to re-open his 1971 claim. Other than Painter's calendar notation, the first time any allegations of accidents specific to September 15 and 16, 1997, appear in the record are in the complaints underlying this matter.

There is evidence that would support a finding that Painter suffered injury resulting from accidents on September 15 and 16, 1997, namely, Painter's testimony and his calendar notation. Taking this evidence in the context of the contradictory documentary evidence and in light of the discord between Painter and Potlatch, it becomes clear that a reasonable person could conclude that the evidence supporting findings of accidents on September 15 and 16, 1997, was not credible and that Painter failed to meet his burden of proof. Because sufficient evidence exists from which a reasonable person could arrive at the same conclusion as the Commission, the Commission's findings are supported by substantial, competent evidence. *Jensen,* 135 Idaho at 409, 18 P.3d at 214 (citing *Zapata,* 132 Idaho at 515, 975 P.2d at 1180).

## B. The Commission May Judge A Claimant's Substantive Credibility.

 The Commission did not observe Painter while he testified. Nonetheless, the Commission found that Painter lacked credibility on the basis of inconsistent statements and unreliable testimony. Painter argues that the Commission's finding regarding credibility ignored *Darner v. Southeast Idaho In Home Serv.,* 122 Idaho 897, 841 P.2d 427 (1992). In *Darner,* this Court held "the demeanor of a witness cannot be judged unless the judge is there to hear it." *Id.* at 900, 841 P.2d at 430. The respondents contend that the Commission may judge a claimant's credibility when determining whether the claimant has met his burden of proof.

 This Court has bifurcated the issue of the Commission's findings regarding credibility into two categories, "observational credibility" and "substantive credibility." Observational credibility "goes to the demeanor of the appellant on the witness stand" and it "requires that the Commission actually be present for the hearing" in order to judge it. *Id.* Substantive credibility, on the other hand, may be judged on the grounds of numerous inaccuracies or conflicting facts and does not require the presence of the Commission at the hearing. *See id.* at 900–01, 841 P.2d at 430–31 (citations omitted). The Commission's findings regarding substantive credibility will only be disturbed on appeal if they are not supported by substantial competent evidence. *Jensen,* 135 Idaho at 412, 18 P.3d at 217 (citing *Zapata,* 132 Idaho at 515, 975 P.2d at 1180).

In this case, the Commission did not judge Painter's observational credibility, but found that Painter's testimony lacked substantive credibility. The Commission noted that "[t]he Referee found that [Painter's] demeanor when testifying and his repeated admissions tended to show [Painter] was a credible witness." The Commission continued, however, to find that "[w]hile [Painter's] demean-

or may have been credible, his inconsistent statements make his testimony inherently unreliable .... so unreliable that his version of the facts is not credible." The grounds for the Commission's finding regarding Painter's credibility included:

> [Painter] did not adequately explain why he recorded the alleged incidents on his calendar on the days they occurred but did not report them to his doctors or to his Employer until weeks later. [Painter] never reported the details of the incidents to co-workers. At one point, [Painter] testified that he was uncertain about the location of the forms for "major" versus "minor" incidents, but Employer has only one form and makes no such distinction. Finally, inconsistencies exist between [Painter's] initial workers' compensation claim and his later testimony describing the incidents.

The Commission judged Painter's substantive credibility, but did not judge his observational credibility, and substantial, credible evidence supported the Commission's finding that Painter lacked credibility. Therefore, the Commission did not err in judging Painter's credibility.

### C. The Court Will Not Address Painter's Other Issues On Appeal.

#### 1. Painter cannot appeal the issue of whether the Commission applied the correct definition of "accident" because there is no adverse finding by the Commission.

 It is well established that, in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error. *Whitted v. Canyon County Bd. of Com'rs*, 137 Idaho 118, 121–22, 44 P.3d 1173, 1176–77 (2002) (citations omitted). In this case, there is no finding adverse to Painter to support the issue of whether the Commission applied the correct definition of accident. Rather, the Commission found that "[t]wice, [Painter] describes lifting a heavy weight and feeling immediate and unusual pain .... The incidents eventually described by [Painter] would qualify as 'accidents' by statutory definition and under the reasoning of *Nelson.*"

The Commission's finding that Painter failed to prove accidents was based on its finding that he lacked credibility, not that the incidents he described were not "accidents." Because the record does not reveal an adverse ruling regarding whether the incidents Painter alleged would, if proven, constitute accidents, this Court will not consider whether the Commission applied the correct definition of accident.

#### 2. This Court will not address whether Potlatch, the Exchange, or the Commission violated Painter's constitutional rights by failing to follow or enforce I.C. §§ 72–601 or –602.

 Though Painter raises the issue of whether his constitutional rights were violated, the argument in support of his contention consists solely of amorphous rhetoric not inviting analysis. Painter offers no authority for the proposition that failure to enforce I.C. §§ 72–601 or –602, if shown, constitutes a constitutional rights violation or of what an appropriate remedy would be in the case of a violation. Where, as here, a party fails to present authority or argument for an issue raised on appeal, the issue is waived. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Therefore, this Court finds that Painter has waived the constitutional issue raised on appeal and will not address the issue on its merits.

#### 3. The record does not support consideration of the remainder of Painter's issues on appeal.

 Issues that are not supported by the record cannot be adjudicated. *See Scott v. Gooding County*, 137 Idaho 206, 209, 46 P.3d 23, 26 (2002). Painter asserts that the Commission shortened the sixty-day period for filing a notice of claim under I.C. § 72–601 and that the Commission allowed Potlatch's accident reporting policy to overrule I.C. §§ 72–601, –602, and –701. A reasonable reading of the record fails to raise these issues. Therefore, we will not address whether the Commission shortened the time for filing a notice of claim or whether it

allowed Potlatch's accident reporting policy to overrule Idaho worker's compensation law.

### D. This Appeal Does Not Warrant Sanctions Against John R. Tait.

 The respondents ask this Court to sanction Painter's attorney, John R. Tait (Tait), because this appeal is not reasonably well grounded in fact or law. Pursuant to I.A.R. 11.1, the signature of an attorney or party certifies that:

> to the best of the signer's knowledge, information, and belief after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

*Id.* If an appeal does not meet the standards of I.A.R. 11.1 and "it is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," then this Court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction which may include ... the amount of reasonable expenses incurred because of the filing ... including a reasonable attorney's fee." *Id.; Bowles v. Pro Indiviso, Inc.,* 132 Idaho 371, 377, 973 P.2d 142, 148 (1999); *see also Rodriguez v. Dept. of Correction,* 136 Idaho 90, 94, 29 P.3d 401, 405 (2001).

Tait's briefs filed on behalf of his client present six purported issues, each with dubious factual or legal foundations and none that might in good faith call for change or adjustment in existing law. Consequently, whether sanctions are appropriate turns on whether this appeal is interposed for any "improper purpose." I.A.R. Rule 11.1.

The record shows that this appeal arose as the result of Tait's vigorous, perhaps overzealous, representation of a client. There is, however, no persuasive indication that Tait or his client interposed this appeal for an improper purpose. Therefore, this Court denies the respondents' requests that it sanction Tait.

### IV.

### CONCLUSION

The Commission's findings of fact and conclusions of law are affirmed. Costs to respondents.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and EISMANN concur.