775 P.2d 101

Tom C. **ROBERTS**,
Claimant–Respondent,

v.

**ASGROW SEED COMPANY**, employer;
Aetna Casualty & Surety Company,
surety, Defendants–Appellants.

No. 17481.

Supreme Court of Idaho.

May 1, 1989.

Rehearing Denied July 11, 1989.

Imhoff & Lynch, Boise, for defendants-appellants. Alan R. Gardner, argued.

Goicoechea Law Office, Boise, for claimant-respondent. Lynn M. Luker, argued.

BAKES, Justice.

Claimant Roberts suffered an industrial accident and injury to his back. After a hearing, an Industrial Commission referee concluded that claimant had sustained permanent physical impairment equal to 5% of the whole man due to the accident. The referee then further found that claimant suffers permanent partial disability equal to 58% of the whole man when other pertinent non-medical factors are considered. The Commission adopted the referee's findings of fact, conclusions of law and order as its own. Defendants moved for reconsideration and additional arguments and authorities were submitted to the Commission, but the motion was denied. Defendants appeal both the original order and the order denying reconsideration. We affirm.

Claimant Roberts was 48 years old at the time of the accident in question. He has an 8th grade education and has worked for a variety of employers over the years as either a semi-skilled or general laborer. The parties do not dispute that claimant suffered an industrial accident and injury on April 14, 1986; further, there is no dispute over the total temporary disability benefits. It is the permanent partial disability which is in question.

Various doctors presented testimony before an Industrial Commission referee, who found the deposition testimony of Roger Curran, a Nampa neurologist, to be the most persuasive. Dr. Curran rendered a 5% whole man permanent physical impairment rating due to the injury. Claimant's treating physicians, vocational rehabilitation specialists, and other experts also testified regarding claimant's ability to find work due to his unusual physical appearance (some of claimant's lower front teeth are missing) and his history of excessive alcohol consumption.

Based on all the testimony, depositions and exhibits, the referee concluded that claimant sustained permanent physical impairment equal to 5% of the whole man due to the industrial accident and injury. As to permanent disability, the referee further found claimant's age, limited formal education, limited work experience, physical appearance, and history of excessive alcohol consumption to be pertinent non-medical factors under I.C. §§ 72–425 and 72–430 in arriving at claimant's permanent partial disability. The testimony from the medical and vocational rehabilitation experts regarding the effect of claimant's non-medical factors was sharply conflicting. After considering all the evidence on the impairment and the non-medical factors, the referee found that claimant had a permanent partial disability equal to 58% of the whole man for which he is entitled to compensation.

Upon its review of the referee's actions and the record, the Industrial Commission adopted the referee's findings of fact, conclusions of law and order as its own. Two weeks later, defendants moved for reconsideration and the parties filed additional briefs, and the Commission held arguments. By decision and order dated March 11, 1988, the Commission further explained its earlier order and denied the motion for reconsideration. The employer and surety appeal from both the original order, dated January 27, 1988, and the subsequent order denying reconsideration. Three issues are raised, each of which will be discussed in turn.

I

## ARE THE FINDINGS OF THE INDUSTRIAL COMMISSION SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE?

Integral to this appeal are the commission's findings that (1) claimant suffered a permanent physical impairment equal to 5% of the whole man due to the industrial accident, and (2) claimant suffers permanent partial disability equal to 58% of the whole man when other pertinent non-medical factors are considered. Appellants contend that these findings, particularly the latter, are not supported by substantial competent evidence.

As to the 5% impairment rating, Dr. Roger Curran testified that claimant suffered a 5% of the whole man permanent

physical impairment due to his injury. The Industrial Commission referee found Dr. Curran's testimony to be the most persuasive, and the full commission later adopted the referee's findings. The Industrial Commission is the arbiter and evaluator of the weight to be given the evidence. *Blackwell v. Omark Industries*, 114 Idaho 10, 752 P.2d 612 (1988). The Commission is entitled to believe or disbelieve each witness's testimony, depending on its determination of the witness's credibility. *Johnson v. Bennett Lumber Co.*, 115 Idaho 241, 766 P.2d 711 (1988). The Commission's determination of the weight and credibility to be accorded to particular evidence will not be overturned unless it is clearly erroneous, and there has been no showing here that the Commission's finding of 5% impairment was clearly erroneous. *Houser v. Southern Idaho Pipe & Steel, Inc.*, 103 Idaho 441, 649 P.2d 1197 (1982).

■ In arriving at the conclusion that claimant suffers permanent partial disability equal to 58% of the whole man, the referee considered as pertinent non-medical factors claimant's age, his limited formal education, his limited work experience, his physical appearance, and his history of excessive alcohol consumption. As is explained in Part II, infra, each factor was properly considered and the record contains substantial competent evidence regarding each of them. In fact, there is no disagree-

ment among the parties concerning the existence of any delineated factor. Evidence was presented, and all the parties agreed that claimant was 48 years old at the time of the accident, that he possessed only an 8th grade education, that his work experience was limited to semi-skilled and general labor, that he was missing some lower front teeth, and that he had a history of excessive alcohol consumption. Accordingly, there is substantial competent evidence upon which the Commission could have based its 58% permanent partial disability finding. Both of the Commission's findings integral to this appeal are supported by substantial competent evidence.

## II

DID THE COMMISSION ERR WHEN IT CONSIDERED CLAIMANT'S PHYSICAL APPEARANCE AND HISTORY OF EXCESSIVE ALCOHOL CONSUMPTION AS NON–MEDICAL FACTORS FOR PURPOSES OF EVALUATING DISABILITY?

Pursuant to I.C. §§ 72–425 [1] and 72–430,[2] the referee found claimant's age, limited formal education, limited work experience, physical appearance, and history of excessive alcohol consumption to be pertinent non-medical factors in determining claimant's permanent partial disability. After considering these factors, and in conjunc-

---

1. **72–425. Permanent disability evaluation.—** 'Evaluation (rating) of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72–430, Idaho Code.

2. **72–430. Permanent disability—Determination of—Percentages—Schedule.—**(1) Matters to be considered. In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the afflicted employee to compete in an open labor market within a reasonable geographical area

considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant, provided that when a scheduled or unscheduled income benefit is paid or payable for the permanent partial or total loss or loss of use of a member or organ of the body no additional benefit shall be payable for disfigurement.

(2) Preparation of schedules—Availability for inspection—Prima facie evidence. The commission may prepare, adopt and from time to time amend a schedule for the determination of the percentages of unscheduled permanent injuries less than total, including, but not limited to, a schedule for partial loss of binaural hearing and for loss of teeth, and methods for determination thereof. Such schedule shall be available for public inspection, and without formal introduction in evidence shall be prima facie evidence of the percentages of permanent disabilities to be attributed to the injuries or diseases covered by such schedule.

tion with its 5% permanent physical impairment finding, the Commission ultimately found that claimant has a permanent partial disability equal to 58% of the whole man.

Appellants contend that the Commission's consideration of claimant's physical appearance and history of excessive alcohol consumption as "pertinent nonmedical factors" constituted error. I.C. § 72–425. Appellants argue that rather than being "pertinent nonmedical factors" under I.C. §§ 72–425 and 72–430, claimant's physical appearance and history of excessive alcohol consumption should be considered "preexisting physical impairments" subject to apportionment under I.C. § 72–406. As such the employer would not be liable for any disability attributable to those two factors. I.C. § 72–406.[3]

The phrase "preexisting physical impairment" in I.C. § 72–406, is not defined in the statutes. To aid in determining its definition appellants refer us to I.C. § 72–332,[4] arguing that "because of their common heritage, the Court's treatment of I.C. § 72–332 is perhaps instructive in interpreting the provisions of I.C. § 72–406." Appellants also refer the Court to its recent pronouncements regarding I.C. § 72–332 in *Mapusaga v. Red Lion Riverside Inn*, 113 Idaho 842, 748 P.2d 1372 (1987).

■■■ A careful reading, however, of I.C. § 72–332, as further explained in *Mapusaga*, demonstrates that on the particular facts of this case the Commission did not err in treating claimant's physical ap-

pearance and history of excessive alcohol consumption as "pertinent nonmedical factors" under I.C. §§ 72–425 and 72–430, rather than "preexisting physical impairments" under I.C. § 72–406. In the *Mapusaga* case this Court analyzed the effect of the 1981 amendment to I.C. § 72–332 which provided that a permanent physical impairment "shall be interpreted subjectively as to the particular employee involved...." The test had not always been a subjective one. Before the amendment in 1981, I.C. § 72–332 contained an objective test. The effect which the 1981 change had upon the evaluation of "permanent physical impairment" was spelled out by the Court as follows:

However, the legislature has changed the emphasis from any claimant to the specific claimant involved. Under the objective test, a particular claimant who is not hindered by an impairment could still qualify for permanent disability as long as the same impairment on a hypothetical claimant could be considered a hindrance. The purpose of the amendment is to eliminate those claimants who have had an earlier injury, but have not suffered any loss of *potential* earning capacity. Now, the nature of the inquiry shifts from a hypothetical claimant to the actual claimant involved.

113 Idaho at 847, 748 P.2d 1372 (emphasis in original). Thus, in order for appellants in this case to prevail in their argument that the employee's condition was analogous to a "permanent physical impairment"

---

3. **72–406. Deductions for preexisting injuries and infirmities.**—(1) In cases of permanent disability less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease.

(2) Any income benefits previously paid an injured workman for permanent disability to any member or part of his body shall be deducted from the amount of income benefits provided for the permanent disability to the same member or part of his body caused by a change in his physical condition or by a subsequent injury or occupational disease.

4. **72–332. Payment for second injuries from industrial special indemnity account.**—....

(2) "Permanent physical impairment" is as defined in section 72–422, Idaho Code, provided, however, as used in this section such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining re-employment if the claimant should become employed. This shall be interpreted subjectively as to the particular employee involved, however, the mere fact that a claimant is employed at the time of the subsequent injury shall not create a presumption that the pre-existing permanent physical impairment was not of such seriousness as to constitute such hindrance or obstacle to obtaining employment.

under 72–332, the condition must actually have been a hindrance to the potential earning capacity of this particular employee, not just a hypothetical employee. Here the Commission found that claimant's physical appearance and history of excessive alcohol consumption did not hinder him in his earning capacity prior to the accident. Claimant has functioned in the manual labor market, without suffering any loss of potential earning capacity, since he was a teenager. The Commission found that his physical appearance and history of excessive alcohol consumption had not served as a hindrance in that job market. The evidence demonstrates that he performed many jobs in the manual labor market, laboring for no less than fourteen different employers, and left those jobs either because the company went out of business, because of seasonal unemployment, or because he chose to leave of his own accord.

Thus, we conclude that under the facts of this case, as found by the Commission, it was not error for the Commission to conclude that claimant's physical appearance and history of excessive alcohol consumption constituted pertinent non-medical factors under I.C. §§ 72–425 and 72–430, rather than "physical impairments" under either I.C. § 72–332 or 72–406.

## III

DID THE COMMISSION'S CLASSIFICATION OF CLAIMANT'S PHYSICAL APPEARANCE AND HISTORY OF EXCESSIVE ALCOHOL CONSUMPTION CONSTITUTE A DENIAL OF EQUAL PROTECTION?

■ Appellants next contend that the Commission's classification of claimant's physical appearance and history of excessive alcohol consumption as "pertinent nonmedical factors" amounts to an arbitrary and unreasonable classification, resulting in a denial of equal protection. Appellants' argument fails for at least two reasons. First, it has not been demonstrated that similarly situated persons are being treated differently. There is no evidence

of such in the record. Nor does the statute on its face provide for any such disparate treatment.

As to the claim that the Commission's classification was arbitrary and unreasonable, I.C. § 72–430 provides that pertinent non-medical factors include, inter alia: (1) "the disfigurement if of a kind likely to handicap the employee in procuring or holding employment," (2) "the diminished ability of the afflicted employee to compete in an open labor market," (3) "all the personal and economic circumstances of the employee," and (4) "other factors as the commission may deem relevant." The Commission found that claimant's physical appearance and history of excessive alcohol consumption fit into one, if not all, of these categories. Based upon the evidentiary record in this case, that action of the Commission was neither arbitrary nor unreasonable in the context of a claim of a violation of the equal protection clause of either the United States or Idaho Constitution.

The Commission's original order, dated January 27, 1988, and the Commission's subsequent order denying reconsideration, dated March 11, 1988, are both affirmed. Costs to respondents. No attorney fees allowed.

SHEPARD, C.J., and HUNTLEY and JOHNSON, JJ., concur.

BISTLINE, Justice concurring and dissenting.

My inability to concur outright is predicated on a present reluctance to endorse the validity of the *Mapusaga*[5] opinion—an appeal in which I did not participate. However, there was occasion to become acquainted with the saga of *Mapusaga* during the time this Court had under consideration the appeal of *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 772 P.2d 119 (1989). In *Horton*, this Court upheld a Commission decision which, in evaluating permanent impairment and in turn permanent disability, refused to consider Horton's deficient collagen makeup and resultant osteoarthritis as a preexisting *condi-*

5. *Mapusaga v. Red Lion Riverside Inn,* 113 Idaho 842, 748 P.2d 1372 (1987).

*tion.* This was a hereditary, and hence a *personal circumstance* over which Horton could exercise no control. By contrast, alcoholic abuse, even though by some considered a disease, is subject to some control, and perhaps complete control.

Either *Mapusaga* needs to be reconsidered, as has also been suggested by one other member of the Court, and if not, then clearly *Horton* is entitled to a rethinking of his case. Or, as one other member of the Court has suggested, perhaps it is in order for the Court to dedicate a number of weeks to a symposium of rehearings in compensation cases whereby the Court itself can review and rethink what have been very vexing problems. Should the Court do so, we should solicit *amicus* appearances by the attorneys who regularly practice in this specialized field.