856 P.2d 96

**Rodger EDWARDS, Claimant–Appellant,**

v.

**HAROLD L. HARRIS CONSTRUCTION, Employer, and Wausau Insurance Companies, Surety, Defendants–Respondents.**

No. 20146.

Supreme Court of Idaho.

June 30, 1993.

Goicoechea Law Offices, Chtd., Idaho Falls, for claimant-appellant. Michael R. McBride argued.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for defendants-respondents. Paul B. Rippel argued.

JOHNSON, Justice.

This is a workers' compensation case. The primary issue presented is the propriety of the Industrial Commission's apportionment of permanent partial disability following an industrial injury, when there was preexisting physical impairment.

Based on *Weygint v. J.R. Simplot Co.*, 123 Idaho 200, 846 P.2d 202 (1993), we vacate the Commission's apportionment, because the Commission did not provide a sufficient rationale for its apportionment to allow review on appeal. We decline the invitation to address whether I.C. § 72–719 permits the Commission to increase a prior award, because the claimant did not preserve the issue for appeal.

**I.**

**THE BACKGROUND AND PRIOR PROCEEDINGS.**

Rodger Edwards was employed by Harold L. Harris Construction (Harris Construction). Edwards injured his back in a job-related accident in 1983. As a result of the injury, Dr. Workman performed surgery on Edwards. Following this surgery, Edwards returned to work.

In 1985, Edwards, Harris Construction, and Wausau Insurance Company (Harris Construction's surety) entered into a compensation agreement concerning Edwards's 1983 injury. The agreement provided that Edwards had a permanent partial disability of fifteen percent of the whole person including, but not limited to, physical impairment, and awarded Edwards $10,931.25. The Commission approved the agreement.

In 1989, Edwards injured his back again while working for Harris Construction. The next year, Dr. Bjornson assigned Edwards a permanent partial impairment rating of thirty percent of the whole person, fifteen percent attributable to the 1983 injury and fifteen percent to the 1989 injury. Harris Construction did not employ Edwards after the 1989 injury. Edwards earns less at his new job than he did while working for Harris Construction.

Edwards filed an application for hearing, seeking, among other things, a determination of the degree of his disability. The Commission found that Edwards was sixty percent permanently disabled. Because Dr. Bjornson had attributed half of his impairment rating to the 1983 injury, the Commission apportioned half, or thirty percent, of his disability to the 1983 injury. The Commission also determined that thirty-five percent of Edwards's impairment was due to arthritis that preexisted the

1989 injury. On this basis, the Commission reduced Edwards's thirty-percent disability award by thirty-five percent. This left Edwards with a disability award of twenty percent attributable to the 1989 injury. Edwards filed a motion for reconsideration, which the Commission denied. Edwards appealed.

## II.

**EDWARDS DID NOT PRESERVE FOR APPEAL WHETHER THE COMMISSION HAS AUTHORITY UNDER I.C. § 72–719 TO MODIFY AN AWARD OF COMPENSATION FOR A 1983 INJURY WHEN DETERMINING THE APPORTIONMENT OF PERMANENT PARTIAL DISABILITY FOLLOWING A 1989 INJURY.**

Edwards asserts that, after apportioning the permanent partial disability following his 1989 injury, the Commission should have increased the award for his 1983 injury to thirty percent. Edwards argues that I.C. § 72–719 authorizes the Commission to do so. We decline the invitation to address this issue. Edwards did not present this issue to the Commission and, therefore, did not preserve it for appeal. *Webster v. Potlatch Forests Inc.*, 68 Idaho 1, 16–17, 187 P.2d 527, 536 (1947).

## III.

**THE COMMISSION DID NOT PROVIDE A SUFFICIENT RATIONALE TO DETERMINE WHETHER THERE IS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE APPORTIONMENT AND WHETHER THE APPORTIONMENT IS IN ACCORD WITH EXISTING LEGAL PRINCIPLES.**

Edwards asserts that there is not substantial and competent evidence to support the Commission's apportionment of his permanent partial disability following his 1989 injury. Based on *Weygint*, we conclude that the Commission did not provide a sufficient rationale for its decision for the Court to review whether the apportionment is supported by substantial and competent evidence and whether the apportionment is in accord with existing legal principles.

The finding of the Commission in *Weygint* that caused the Court to vacate the award is very similar to the finding in this case. The crucial part of the finding adopted by the Commission in *Weygint* stated:

> The Referee concludes that it is appropriate to apportion the disability caused by non-medical factors in approximately the same proportion as is the disability due to permanent physical impairment.

*Id.* at 204, 846 P.2d at 206.

In this case, the Commission adopted the following finding:

> After considering Claimant's medical factors related to his problems with his back, and his pertinent non-medical factors, ... the Referee finds that Claimant has a permanent partial disability of 60% of the whole person, which is in addition to his permanent physical impairment rating of 30% of the whole person. However, the Referee also finds that it is appropriate that Claimant's permanent partial disability be apportioned and reduced by one-half, under the provisions of *Idaho Code*, Section 72–406, due to the fact that Dr. Bjornson attributed one-half of Claimant's permanent physical impairment rating of 30% of the whole person to Claimant's previous back injury and subsequent surgery in 1983.

We conclude, as the Court did in *Weygint*:

> The Commission correctly set forth the burden imposed under I.C. § 72–406, but then apparently applies what is known as the *Carey* formula, *Carey v. Clearwater County Rd. Dep't*, 107 Idaho 109, 118, 686 P.2d 54, 63 (1984), to apportion the disability caused by non-medical factors.
>
> The Commission gives no rationale nor basis for this apportionment.
>
> The *Carey* formula was adopted by this Court to be applied in ISIF cases and is not a formula to be mechanically applied to all non-medical apportionment issues.
>
> We are not able to determine the basis for the apportionment by the Commission

based upon its findings and vacate that portion of the award dealing with the apportionment of disability caused by nonmedical factors.

*Weygint,* 123 Idaho at 204, 846 P.2d at 206.

We also note that the Commission reduced the permanent disability apportioned to the 1989 injury because of preexisting degenerative arthritis. We have rejected the use of the *Carey* formula in the manner the Commission employed it here, and we are unable to discern how the Commission would have dealt with the preexisting degenerative arthritis, if it had used another rationale for apportionment. Therefore, it is inappropriate to give the Commission direction on this aspect of the case. We trust that the Commission will carefully appraise the significance, if any, of the degenerative arthritis in making an appropriate apportionment.

### IV.

### CONCLUSION.

We vacate the portion of the Commission's decision in which the Commission apportioned Edwards's permanent physical disability and remand the case to the Commission for further proceedings.

We award costs on appeal to Edwards.

McDEVITT, C.J., and TROUT and SILAK, JJ. concur.

BISTLINE, Justice, dissenting.

Justice Johnson's citation to the case of *Webster v. Potlatch Forests, Inc.,* 68 Idaho 1, 187 P.2d 527 (1947), serves the salient purpose of bringing to the fore a revisit to the law as it was in 1947 and 1948, at which time in history the war was over and the law schools, including Idaho, were besieged with first and second year students.

After reviewing *Webster,* the conclusion is reached that there should be considerable concern prior to putting that case into service. *Webster* was not a law suit in the sense of the scenario which usually comes to mind. Mr. Webster was not plaintiff in a law suit, but rather a worker claiming a rather modest entitlement to benefits due

him under the provisions of the Unemployment Compensation Law. Potlatch had discharged Webster after twenty-six years, doing so on the grounds of supposed insubordination, which grounds were thereafter never established, as is well demonstrated over seventeen pages of majority opinion authored by Justice Holden, with concurrences by Justices Given, Miller, and Hyatt. Chief Justice Budge managed to contain his dissent to four pages, 68 Idaho at 17–20, 187 P.2d at 537–539. Reading the same transcript as Justice Holden, Chief Justice Budge stated that he "could reach no other conclusion than that claimant's discharge was wholly attributable to his own acts and conduct."

The Session Laws of 1945, ch. 203 (S.B. No. 146) provided:

*Be It Enacted by the Legislature of the State of Idaho* :

SECTION 1. That Title 43, Idaho Code Annotated, be and the same is hereby amended by adding a new chapter to be designated as chapter 22, containing the following sections, 43–2201 and 43–2202, and to read as follows:

43–2201. SHORT TITLE.—This Act shall be known and may be cited as the 'Unemployment Compensation Law.'

Idaho Code § 43–2202 encompasses a declaration of state public policy and explains the need and concomitant expected benefits. Idaho Code § 43–2408, reads, in part, as follows:

43–2408. PERSONAL ELIGIBILITY CONDITIONS.—The personal eligibility conditions of a benefit claimant are [inter alia] that. . . .

(e) His employment is not due to the fact that he left his last employment voluntarily without good cause connected with his employment, or that he was discharged for misconduct in connection with his employment: provided that if such separation from employment was not wholly attributable to the claimant, he may be determined to be eligible.

So that there might remain no doubt as to where this one member of the Court stands, it is clear that a good many of the Court's recent opinions are disposing of

appealed lower court decisions on the premise that the Court declines to address issues which were not first raised in the trial court. But, to be kept in mind is the probability that what appears to be an important issue which should be decided be cast aside as "not raised in the trial court."

A better proposition for this Court, or for any court hearing appeals, would be to be less demanding of perfection in perfecting appeals. This is especially true in cases, like this one, where the Court is remanding the cause for further proceedings. Otherwise it seems that overuse of the "failure to have raised at trial" hypothesis may run rampant, to the dismay of law practitioners and to the detriment of lay clientele relying solely upon their chosen attorneys to protect them from *all* evil.

Input from members of the practicing bar would be welcome and could be of immense benefit. In turn, what may be best for the trial attorneys, and equally beneficial for the Idaho courts, would be for the Court to intimate what needs be done to assure that an issue is preserved. It would seem that where a relatively obscure issue may have eluded counsel in trial court proceedings, that, unless it presents a clear-cut case of sandbagging, the interests of achieving justice (Rule 1, Idaho Rules of Civil Procedure) will be best served by allowing that issue to be aired on further proceedings by way of appeal, absent any extreme prejudice actually be caused to an adverse party.

To avoid the question of whether I.C. § 72–719 permits the Commission to increase a prior award on the grounds that the claimant's evidence is insufficient on the ground that the claim must be asserted in the first instance elevates form over substance. It is not readily understood why, especially in compensation law, wholly and purely an administrative proceeding, a worker should on such slim technicality thereby be deprived of his sure and certain monetary relief. One ought not forget that the worker has been, by the promise of certain and sure administrative relief,

stripped of his right to seek monetary damages at a jury trial.[1]

---

1. The circumstances giving rise to Edwards' compensation claim are indeed concise and

readily stated in Part I of the majority opinion. *See* at 59, 856 P.2d at 96.